In the Matter of the Application for the Reinstatement of Gordon Clinton PETERSON, also known as Gordon C. Peterson, as an Attorney at Law of the State of Minnesota.

No. 37947.

Supreme Court of Minnesota.

Jan. 12, 1979.

Rehearing Denied Feb. 5, 1979.

R. Walter Bachman, Jr., Administrative Director of Professional Conduct, Lawyers Professional Responsibility Board, St. Paul, for respondent.

Erwin Peterson, Minneapolis, for petitioner.

Considered and decided by the court en banc.

PER CURIAM.

Petition for reinstatement brought by disbarred attorney Gordon C. Peterson. Since the petition was filed August 7, 1974, Petitioner has had three evidentiary hearings. The first, before the Hennepin County Bar Association Ethics Committee on August 23, 1974, resulted in the finding of an objection by the committee to the reinstatement of Petitioner on the ground that he failed to establish the required moral change by clear and convincing evidence.

A second hearing was held on November 27, 1974, before the administrative director

of the State Board of Professional Responsibility, who was authorized by the Rules on Lawyers Professional Responsibility to investigate the matter and report his findings to the Board of Professional Responsibility and this court. On January 3, 1975, the director's report was filed, recommending that the petition for reinstatement be denied.

On February 20, 1978, Petitioner requested a formal judicial hearing. This court appointed Judge Thomas G. Forsberg as referee to receive relevant evidence, make appropriate findings, and submit recommendations to this court on the Petitioner's fitness to practice law in the light of the offenses for which he was originally disbarred and his behavior subsequent to the time of the disbarment. A hearing was held on April 12 and 13, 1978. At that time, Petitioner also put into evidence the transcript from the hearing before the administrative director. Subsequently, the referee filed with this court comprehensive findings of fact, conclusions, and a recommendation that the petition for reinstatement be denied. We have examined the evidence, have heard oral argument, and after careful consideration, are persuaded that the petition for reinstatement must be denied.

Petitioner was disbarred on June 23, 1961 on two counts of unprofessional conduct. *In re Application for Discipline of Peterson,* 260 Minn. 339, 110 N.W.2d 9 (1961). First, it was found that he had forged a criminal information containing a fictitious charge with which he induced a client to pay him a retainer of $1,000. Second, it was found that he had failed to account for the proceeds of a sale of property he had negotiated for a client confined in state prison.

Since his disbarment Petitioner has sought reinstatement four times, withdrawing one petition voluntarily in July of 1965. Twice this court has denied reinstatement: *In re Application for Reinstatement of Peterson,* 275 Minn. 559, 146 N.W.2d 768 (1968); *In re Application for Reinstatement of Peterson,* 288 Minn. 550, 181 N.W.2d 341 (1970).

Petitioner now contends that he has shown good moral character and sufficient rehabilitation to warrant his reinstatement as a licensed attorney. Since disbarment Petitioner has been employed in several businesses primarily involving sales. He has been active in his church and in his golf club. Nine character witnesses testified on his behalf before the referee. Several of those witnesses testified that Petitioner has always been of good moral character. No evidence was presented to the referee showing Petitioner to be unrespected, distrusted, or disliked in his social or business relationships.

Considerable evidence was presented bearing on Petitioner's professional integrity and activity in the area of law. Petitioner testified that since disbarment he has continued to identify himself as an attorney. Subsequent to disbarment he had business cards printed identifying himself as an attorney, which he distributed incidental to his sales activities. He did not discontinue this practice until 1975, and at the April 1978 hearings he testified that he still does not think it was wrong.

Petitioner continues to introduce himself as an attorney. At the referee's hearing, Petitioner admitted he had testified in his December 3, 1976 deposition, *In the Matter of Gordon C. Peterson v. Robert J. Sheran, et al.,* in Minnesota federal district court, "Counsel, until I die I will represent myself as a lawyer." Petitioner also testified before the referee that he had identified himself as an attorney to an Ohio judge who was visiting Minnesota, but he did not tell the judge he was disbarred. This testimony conflicted with his testimony before the administrative director in 1974 that he had told the judge he was disbarred.

Furthermore, Petitioner was listed as an attorney in the published roster of his golf club in 1972, 1973, 1974, and 1975. Before the administrative director, Petitioner testified that he had listed himself as an attorney in the roster to make himself feel better, but before the referee, he denied having permitted the listings. In rosters published after 1975, the identification as attorney no longer appeared.

In the 1972 Minneapolis telephone directories, Petitioner was listed as an attorney in its white and yellow pages. At his deposition on December 3, 1976, Petitioner testified that he listed himself as an attorney in the yellow pages because he was confident that his petition for reinstatement would be granted. However, a telephone company representative testified that the listing was made in September or October of 1971. The petition was denied nearly a year earlier on November 6, 1970. Although Petitioner did not deny his earlier testimony at the hearing before the referee, he added that someone had just told him another disbarred attorney had made the listing in Petitioner's name. The listing appeared until Petitioner was confronted with it by the Minnesota State Bar Association.

Since the filing of this petition, Petitioner has performed the acts of an attorney with unfortunate consequences. On November 20, 1974, Thomas Stockheimer, who was indicted in federal district court in Wisconsin for assaulting a federal officer, filed a motion for an order to allow Petitioner to act as Stockheimer's counsel and spokesman in the upcoming trial. Petitioner also filed three other motions in identical form with respect to three other defendants in separate actions involving false income tax statements. These motions were signed by Petitioner just five and two days prior to the hearing on this petition for reinstatement before the administrative director. However, he did not disclose this activity to the administrative director.

The federal district court granted Petitioner's motions, noting that this conclusion would have been the same had Petitioner been a "carpenter or a farmer." However, he warned Petitioner and another disbarred Minnesota attorney in his Order of December 4, 1974:

"Neither by this opinion and order, nor by any subsequent action by me in this case, do I intend to afford either Gordon Peterson or Jerome Daly any protection or immunity whatever from the operation of any laws, state or federal, which may apply to them and their activities, partic-ularly those laws of the states of Minnesota or Wisconsin with respect to the unauthorized practice of law. In all these respects, Gordon Peterson and Jerome Daly proceed at their own risk."

Of special significance to this court is the observation made by the federal court after extensive examination of Petitioner's qualifications:

"Quite apart from the fact that he is not presently licensed to practice law, he is not presently professionally qualified to serve effectively as an attorney for a defendant in a criminal case."

In spite of the federal court's admonitions, Petitioner participated in all four trials. With respect to the *Stockheimer* case, Petitioner performed the usual services of an attorney during the three-day trial. He sat at counsel table, conferred with Stockheimer, addressed the jury, argued motions, participated in side bar conferences and conferences in chambers, examined and cross-examined witnesses, and participated in the conference on instructions. Stockheimer was convicted and appealed to the Seventh Circuit Court of Appeals on the ground that it was plain error for the federal judge to have permitted Petitioner to represent him; the Seventh Circuit Court affirmed Stockheimer's conviction. *United States v. Stockheimer*, 385 F.Supp. 979 (W.D.Wis.1974), aff'd 534 F.2d 331 (7 Cir. 1976), cert. den. 429 U.S. 966, 97 S.Ct. 397, 50 L.Ed.2d 335 (1976). In an unpublished opinion the Court held that Stockheimer could not be heard to complain about the consequences where the representation of a disbarred attorney was at his request. See, *United States v. Peterson*, 550 F.2d 379, 381 (7 Cir. 1977).

On March 26, 1975, Petitioner was indicted in the United States District Court, Western District of Wisconsin, upon the allegation that he had practiced law in violation of Wisc. St. 256.30, subd. 1, 2, and the "Assimilated Crimes Act," 18 U.S.C. §§ 7, 13, and was found guilty by a federal jury of the offense of practicing law without a license on United States property. Petitioner was thereafter sentenced to 30 days

in jail; the sentence was stayed pending appeal.

On appeal, the Seventh Circuit Court of Appeals reversed Petitioner's conviction on the narrow ground that the Federal Assimilated Crimes Act was not intended to be applied for alleged acts of unauthorized practice of law committed in a federal courtroom. However, the Court found the evidence clear that Petitioner had performed as an attorney and noted that it did not intend to imply that unauthorized practice of law would be sanctioned in the Seventh Circuit. *United States v. Peterson,* 550 F.2d 379, 381, 385 (7 Cir. 1977).

After the conviction of Stockheimer, Petitioner wrote a letter to the administrative director and characterized his representation of Stockheimer as "mistakes." He stated the purpose of his letter as follows:

"This letter is written with the hope that it will convince those that will make the decision on my reinstatement that I am sincere and will meet all conditions necessary to prove competence to practice law."

But, referring to that letter at the referee's hearing, Petitioner expressed a different sentiment:

"Q. And there you refer to the mistakes and indiscretions which you are informing Mr. Sharood of, what mistakes and indiscretions were you making reference to in that letter?

"A. That was a big mistake, I was crawling, I was ready to do anything to get my license back. I was going to kiss the ass of anyone who permitted it and that's the only way I could get it. I actually, for one time in my life, I acted like a mouse and I did this time."

Similarly, Petitioner has never admitted that his actions for which he was disbarred were wrong. He has maintained that the fictitious criminal complaint was merely a joke.

Additional evidence was presented in the April 1978 hearings that Petitioner has failed to make any payments on four tax judgments, totalling nearly $5,000, which were entered in 1969. He has, however, paid all taxes since 1971.

We have previously declared the principles governing review of an application for reinstatement to the bar of the State of Minnesota. The purpose of discipline is not to punish the attorney but to guard the administration of justice and to protect the public. *In re Application of Strand,* 259 Minn. 379, 107 N.W.2d 518 (1961); *In re Application of Smith,* 220 Minn. 197, 19 N.W.2d 324 (1945). Stronger proof of good moral character and trustworthiness is required than in an original admission. 220 Minn. 200, 19 N.W.2d 326. We have used the term "moral character" in a professional context as it relates to one's capacity to serve the public in the practice of law. A distinction must be drawn between personal moral character and professional moral character. The responsibility of this court to formulate ethical principles and standards of professional conduct and to enforce those standards on the lawyers of this state does not give us license to make judgments as to a lawyer's personal morality, but only with regard to that lawyer's professional moral character. Professional morality, because of the fiduciary position occupied by the attorney, necessarily exacts higher standards of conduct. A person may, as Petitioner here, be well regarded by friends, refrain from smoking and drinking, participate in church activities, and yet lack a sense of professional rectitude.

The standards of conduct established by this court are embodied in the Code of Professional Responsibility, adopted August 4, 1970 (286 Minn. ix), and the Canons of Professional Ethics, adopted May 2, 1955 (241 Minn. xvii). It is against these standards that we judge an individual's fitness to continue in the practice of law. *In re Daly,* 291 Minn. 488, 189 N.W.2d 176 (1971). Similarly, it is against these standards that we must review the behavior of a disbarred attorney who asserts that he has undergone such a moral change as now to render him a fit person to enjoy the public confidence and trust once forfeited. See, *In re Appli-*

*cation of Smith,* 220 Minn. 197, 201, 19 N.W.2d 324, 326 (1945).

In order to prove a moral change, a petitioner for reinstatement must show his present ability to adhere to the strict code of professional morality by clear and satisfactory evidence. See, *In re Application of Smith, supra.* The burden of proof is heavy. As the referee was instructed, we, too, must consider Petitioner's present fitness to practice law in the light of the offenses for which he was originally disbarred. The conduct for which Petitioner was disbarred violated the basic integrity of the legal process itself. What is more contrary to professional moral sense than to forge an indictment to bring a person into a court of law on a criminal charge, no matter whether it was for pecuniary gain or merely a bizarre joke. Both offenses revealed Petitioner to lack the requisite trustworthiness and professional competence necessary to entitle him to handle the public's legal matters. Regardless of characterization, and we have characterized similar offenses as constituting moral turpitude, *In re Discipline of O'Malley,* 225 Minn. 387, 30 N.W.2d 693 (1943); accord, *In re Anderson,* 195 N.W.2d 345 (N.D.1972), the gravity of the original offenses cannot be minimized. It is disturbing that Petitioner refuses to regard his original misconduct as constituting more than a mere joke. Certainly, rehabilitation and reformation demand that the individual perceive and reject the wrongfulness of his conduct and show in some positive way that he now has a correct sense of professional responsibility.

Since disbarment, Petitioner has not conducted himself in a manner to induce the confidence of this court in his professional morality. His conduct continues to be tainted by misrepresentations, flagrant disregard for the sanction of disbarment, and lack of appreciation for the ethical code governing attorneys.

Code of Professional Responsibility, Ethical Consideration 2–13 provides as follows:

"In order to avoid the possibility of misleading persons with whom he deals, a lawyer should be scrupulous in the representation of his professional status."

Furthermore, Code of Professional Responsibility, Disciplinary Rule 1–102(A)(4), provides that a lawyer shall not engage in conduct involving misrepresentation.

Petitioner's practice of identifying himself as an attorney, his intent to continue doing so, and his attempts to gain admission to courts by "powers of attorney" are misleading and misrepresenting to the public. As the North Dakota Supreme Court in the *Application of Christianson,* 215 N.W.2d 920, 925 (N.D.1974), in reviewing the activities of a suspended attorney as a law clerk observed, "[I]f a suspended lawyer so conducts himself, it is difficult to see how the general public can know whether or not he is entitled to practice law."

Petitioner attempts to excuse his practice of identification as harmless because, he contends, he is not practicing law. However, we agree with the California Supreme Court that unauthorized practice of law includes the mere holding out by a disbarred attorney that he is practicing or is entitled to practice law. See, *Farnham v. State Bar,* 17 Cal.3d 605, 131 Cal.Rptr. 661, 552 P.2d 445 (1976).

Moreover, Petitioner's conduct went beyond simply calling himself an attorney.[1] As the Seventh Circuit Court of Appeals, in reversing the conviction for unauthorized practice on other grounds, stated:

"We need not consider so much of that issue as relates to the sufficiency of the evidence which clearly demonstrated that

---

1. Petitioner's argument that his actions were not different than those of a layperson is similar to the argument made in *Application of Christianson,* 215 N.W.2d 920 (N.D.1974). There, in rejecting the argument, the court stated:

"A suspended lawyer is not the same as a layman. The public knows that he has a legal education, that he has engaged in the practice of law, and that his work and his opinions are presumably more valuable on that account. We cannot accept the argument that a disbarred or suspended lawyer may engage in all activities which nonlawyers also perform." 215 N.W.2d 925.

Peterson was practicing law in behalf of Stockheimer regardless of the various terms which might be applied to the relationship." *United States v. Peterson,* 550 F.2d 379, 382 (7 Cir. 1977).

A finding of unauthorized practice by a disbarred or suspended attorney has provided grounds for denial of reinstatement in other states. See, *In re Stephenson,* 243 Ala. 342, 10 So.2d 1 (1942); *In re Lacey,* 11 Cal.2d 699, 81 P.2d 935 (1938); *In re McKelvey,* 82 Cal.App. 426, 255 P. 834 (1927); *State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116 (1974); *Application of Christianson, supra; Application of Grimes,* 494 P.2d 635 (Okl.1971); *In re Gowan,* 141 Wash. 523, 251 P. 773 (1927).

Although we have not previously reached this issue, we did determine in *State Board of Law Examiners v. Bensel,* 122 Minn. 529, 142 N.W. 1134 (1913), that a suspended attorney who practiced law without authorization could not seek an annulment of the suspension.[2]

Furthermore, Petitioner's conduct in the *Stockheimer* case directly violates the Code of Professional Responsibility, Disciplinary Rule 6–101(A)(1), which provides:

"A lawyer shall not handle a legal matter which he knows or should know that he is not competent to handle * * *"

In spite of the presiding federal judge's express finding of Petitioner's incompetence in criminal law, Petitioner, who had not practiced law for about 13 years, proceeded to sit at the counsel table, to confer with defendant, to address the jury, to argue motions, to participate in conferences with the court and to examine and cross-examine witnesses. The harm caused by inadequate representation under such circumstances is difficult to measure. But it is clear that Petitioner did not act in the best interests of the defendant by ignoring the caveat of the federal court. This conduct does little to assure us that Petitioner now possesses the necessary trustworthiness requisite to reinstatement.

■ Finally, Petitioner's testimony before the referee disclosed a willingness to promise to follow the Code of Professional Responsibility but an apparent inability to understand the practical application of those principles, which was evident from his conduct since he last petitioned for reinstatement and his lack of remorse concerning those incidents. We cannot rest our decision on an assurance of good intentions where a pattern of conduct defies those promises.

■ After careful consideration of the record before us, we must conclude that Petitioner has failed to establish by clear and satisfactory evidence such a change in his professional moral character as to warrant his reinstatement to the licensed bar of Minnesota. Petition for reinstatement denied.

KELLY, J., took no part in the consideration or decision of this case.

---

2. Two policy arguments support denial of reinstatement for unauthorized practice of law. First, practice of law after disbarment constitutes a contempt of court. *State Board of Law Examiners v. Nelson,* 203 Minn. 598, 280 N.W. 5 (1938). Second, the unauthorized practice of law is a criminal offense. Minn.St. 481.01.