Esko E. RANTA, Plaintiff and Appellee,

v.

Robert P. McCARNEY, Defendant and Appellant.

Civ. No. 11033.

Supreme Court of North Dakota.

July 16, 1986.

Stephan A. Pezalla (argued), Golden Valley, Minn., and Ervin J. Lee, of Webster, Engel & Lee, Bismarck, for plaintiff and appellee.

A. William Lucas, of Lundberg, Nodland, Lucas & Schulz, P.C., Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Robert P. McCarney appealed from a judgment of the Burleigh County Court in favor of Esko E. Ranta for recovery of fees for legal services. We reverse and remand.

■ Ranta is an attorney licensed to practice in Minnesota. Since 1966 he has travelled to North Dakota to provide various legal advice to McCarney, primarily in the area of taxation. He never has been licensed to practice law in the State of North Dakota. Details of the fees to be charged were traditionally left open, with Ranta billing McCarney the amount Ranta believed was fair and reasonable for the services rendered. Ranta states that they never had any problems so far as fees were concerned, and that McCarney "referred to me at least twenty clients in this area, . . ." At one point, Ranta opened what he called a "branch office" in Bismarck, apparently to serve those additional clients.[1]

■ McCarney hired Ranta in 1977 in connection with the sale of McCarney's Ford, Inc. On November 7, 1977, the final documents selling the business were negotiated and signed in an all-day closing in Bismarck. On or about June 1, 1978, McCarney paid Ranta $5,000. At the end of that month Ranta sent McCarney his bill of $22,500, showing the $5,000 paid as a credit and a $17,500 balance due. The bill contained no statement of hours or costs incurred. At trial office records that showed approximately sixty-one hours of work on behalf of McCarney were submitted. According to Ranta, the only other time records were kept in his mind.

At the end of the trial McCarney[2] moved to amend his answer to include the defense that Ranta never was licensed to practice law in the State of North Dakota and therefore could not recover compensation. The trial court granted the motion, but in a later memorandum opinion stated that McCarney

"has received the total benefits of the contract and should not now be allowed to claim that Mr. Ranta is not entitled to his fee. There is nothing in the law of the State of North Dakota which prohibits Mr. Ranta from collecting his fee, and in addition, the doctrine of equitable estoppel should preclude Mr. McCarney from advancing such an argument."

Section 27–11–01, N.D.C.C., prohibits the practice of law in this State without proper authorization:

"Except as otherwise provided by state law or supreme court rule, a person may not practice law, act as an attorney or counselor at law in this state, or commence, conduct, or defend in any court of record of this state, any action or proceeding in which he is not a party con-

---

1. Ranta freely admitted at trial to rendering services to "at least twenty clients in this area" and opening a branch office in Bismarck. Ranta gave the following justification for providing McCarney with legal advice in this State:

"I know it's a criminal act as far as the courts are concerned, but to take matters like tax planning or representing clients before the Internal Revenue Service, I have had clients in at least half of the fifty states that I have represented on tax matters, and the question has never been raised. This was basically a tax matter that I was counselling Mr. McCarney on."

Although in-State practice before a Federal court pursuant to that court's rules commonly has been construed as an authorized practice of law, this Court has no knowledge of any special exception given to persons practicing in the area of tax law. The unlicensed practice of law in this State by non-resident attorneys is allowed only when court permission, pursuant to the applicable Federal or State court rules, is granted for the limited purposes of appearing in relation to a particular matter before the court. See Rule 2, North Dakota Admission to Practice Rules. Any other unauthorized practice of law is prohibited by § 27–11–01, N.D.C.C.

2. McCarney was unable to testify at trial due to health reasons.

cerned, nor may a person be qualified to serve on a court of record unless he has:

"1. Secured from the supreme court a certificate of admission to the bar of this state; and

"2. Secured an annual license therefor from the state bar board.

"Any person who violates this section is guilty of a class A misdemeanor."

This Court defined "the practice of law" in *Cain v. Merchants Nat. Bank & Trust Co. of Fargo,* 66 N.D. 746, 752, 268 N.W. 719, 722 (1936), by quoting *In re Opinion of the Justices,* 279 Mass. 607, 613–614, 194 N.E. 313, 317 (1935):

"... 'Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation. They require in many aspects a high degree of legal skill, a wide experience with men and affairs, and great capacity for adaptation to difficult and complex situations. These 'customary functions of an attorney or counsellor at law' * * * bear an intimate relation to the administration of justice by the courts. No valid distinction, ... can be drawn between that part which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the ground work for future possible contests in courts. It has profound effect on the whole scheme of the administration of justice. It is performed with that possibility in mind, and otherwise would hardly be needed. * * * It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill, of sound moral character, and acting at all times under the heavy trust obligation to clients which rests upon all attorneys. The underlying reasons which prevent corporations, associations and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts.' ...'"

The court went on to state that "[i]f compensation is exacted either directly or indirectly, 'all advice to clients, and all action taken for them in matters connected with the law,' constitute practicing law." *Cain,* 66 N.D. at 752, 268 N.W. at 722, quoting *In re Duncan,* 83 S.C. 186, 189, 65 S.E. 210, 211 (1909). *Cain* and its progeny demonstrate that Ranta's conduct constituted the practice of law in this State. See also *State v. Niska,* 380 N.W.2d 646 (N.D.1986).

■ Although our statutory law does not specifically prohibit compensation of out-of-State attorneys who practice law in the State in violation of § 27–11–01, the statute is clearly intended to provide protection to our citizens from unlicensed and unauthorized practice of law. As we stated recently in *Niska,* "North Dakota has a compelling interest in regulating the practice of law within its boundaries." 380 N.W.2d at 650. Section 27–11–01 "is aimed at preventing the harm caused by unqualified persons performing legal services for others." 380 N.W.2d at 649. Although Ranta may be competent (a factor which is irrelevant), he is not authorized to practice law in this State. The purpose of the statute is to determine *before* an individual practices in this State whether that person is competent and qualified to do so.

■ Prior to this case we have not had occasion to determine whether an out-of-State attorney not authorized to practice law in this State may recover compensation for his or her services. There are, however, two North Dakota cases which are analogous. *Application of Christianson,* 215 N.W.2d 920 (N.D.1974), involved legal work performed by a suspended lawyer

which, the lawyer alleged, could be lawfully performed by a layperson. The Court held that the suspended attorney "is subject to the same restrictions as are laymen, such as the limitation that [the acts performed] involve his own business and *that he charge no fee.*" 215 N.W.2d at 926. (Emphasis added.)[3]

We believe a fair reading of Section 27–11–01 and *Christianson* indicate a preference by both the Legislature and our Court of furthering the strong policy considerations underlying the prohibition against the unauthorized practice of law that occurs in this State by barring compensation for any such activities. The statute is intended to protect the public from unlicensed attorneys and is to be liberally construed "with a view to effecting its objects and to promoting justice." Section 1–02–01, N.D.C.C. An out-of-State lawyer who is not authorized to practice law in this State (such as Ranta) sits in the same position as a suspended attorney previously admitted to practice law in this State (as in *Christianson*); such a person cannot lawfully practice law in this State, nor can that person charge a fee for such services. We therefore hold that an out-of-State attorney who is not licensed to practice law in this State cannot recover compensation for services rendered in the State of North Dakota. This position is in accord with the majority

view on the issue. See generally cases cited in 11 A.L.R.3d 907 (1967 & Supp. 1985); 7 Am.Jur.2d *Attorneys at Law* § 242 (1980); 7A C.J.S. *Attorney & Client* § 285 (1980 & Supp.1985). We further hold that a violation of § 27–11–01 precludes the application of equitable principles, such as equitable estoppel, because such a violation constitutes unclean hands. See, e.g., *Gajewski v. Bratcher,* 221 N.W.2d 614 (N.D. 1974).

A problem develops, however, in relation to exceptions to the rule that many jurisdictions have developed. The exception of Federal court practice (as opposed to State court practice) does not apply because Ranta's conduct did not involve an appearance in a federal court. See, e.g., *Spanos v. Skouras Theatres Corporation,* 235 F.Supp. 1 (S.D.N.Y. 1964), *affirmed in relevant part,* 364 F.2d 161 (2d Cir.), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966); *Cowen v. Calabrese,* 230 Cal.App.2d 870, 41 Cal.Rptr. 441 (1964). Nor do we perceive a justification for Ranta's conduct under the interstate practice exception. Although some States allow an out-of-State attorney to recover fees where the attorney made proper disclosure to the client and associated with local counsel, such as Massachusetts [*Brooks v. Volunteer Harbor No. 4,* 233 Mass. 168, 123 N.E. 511 (1919) ],[4] we need not reach the

---

**3.** The *Christianson* court also drew a distinction between suspended lawyers and laypersons:

"A suspended lawyer is not the same as a layman. The public knows that he has a legal education, that he has engaged in the practice of law, and that his work and opinions are presumably more valuable on that account. We cannot accept the argument that a disbarred or suspended lawyer may engage in all activities which nonlawyers also perform. On the other hand, we are not willing to foreclose him from acts which he is permitted to perform by reason of alternate qualifications, such as a real estate broker's license. In the case of *In re Peterson,* 175 N.W.2d 132 (N.D.1970), the petitioner made his living during suspension as an abstractor without being criticized for so doing. A suspended lawyer may engage in some such activities if he is otherwise qualified to do so, but not if his qualifications come from having been a lawyer. For example, a suspended lawyer who is also a public accountant may prepare tax re-

turns as a public accountant. But a suspended lawyer may not prepare the papers necessary to incorporate a corporation merely because one of the stockholders of the corporation might also be able to fill in blanks on a printed form by himself. When professional expertise enters into the activity, and when the activity is one which is customarily performed by lawyers, then such activity is forbidden to a suspended attorney, even though under some conditions members of other professions may sometimes be allowed to perform the same acts." 215 N.W.2d at 925–926. Ranta's qualifications came from his having been a lawyer for forty years specializing in the area of tax law.

**4.** But see *Harriman v. Strahan,* 47 Wyo. 208, 33 P.2d 1067 (1934) [full knowledge by client does not prevent client from raising rule against compensation].

issue because such is not the situation here. Another State has adopted a "sister-State" exception, allowing recovery when the attorney is licensed to practice law in a sister State and has not offended the spirit of intention of the statutes regulating the practice of law. See *Freeling v. Tucker*, 49 Idaho 475, 289 P. 85 (1930).[5] But even if we were to adopt an interstate or sister-State exception (a point which we do not reach), such an exception would not apply here in light of Ranta's long-term unauthorized practice in this State, his involvement with many other area clients, and his opening a branch office in Bismarck. Such conduct is a clear violation of § 27–11–01.

The dissent attempts to frame the question as whether the protection of the economic interests of the attorneys of the State and the estate of McCarney is more justifiable than the forfeiture to Ranta and windfall to McCarney occasioned by this opinion. It apparently urges that because Ranta is licensed in another State Section 27–11–01, N.D.C.C., should not apply or, alternatively, that the Federal-court-practice exception should apply. Justice Levine makes an eloquent plea that our statute is not meant to govern this situation in which the attorney is licensed in another State. It may be that such an exception is warranted, but such a plea is more properly made to a legislative committee considering a bill enacting such an exception or to this court in its rule-making function than it is in a judicial decision. Although Ranta may not be a Niska, neither the statute nor our rules permit any distinction. The statute is not ambiguous—it simply prohibits any person not licensed to practice law from practicing law except as otherwise provided by law or rule of this court. We therefore cannot "construe" the statute under the pretense of pursuing its spirit because legislative intent is presumed clear from the face of the statute. Section 1–02–05, N.D. C.C.; *Milbank Mut. Ins. Co. v. Dairyland Ins. Co.*, 373 N.W.2d 888 (N.D.1985).

The dissent thus ignores Article VI, Section 3, of the North Dakota Constitution which specifies that this court has the authority *"unless otherwise provided by law* to promulgate rules and regulations for the admission to practice, conduct, disciplining, and disbarment of attorneys at law." [Emphasis supplied.] Section 27–11–01, N.D. C.C., is a law· enacted by the legislative branch of our government and we, as the Supreme Court, are not free to ignore its plain dictates in the interest of the "modern demands of business and the mobility of our society." Those are properly matters for consideration by the legislative branch of government.

This court has continuously recognized that irrespective of the fact that our State Constitution does not contain a general distributing clause expressly providing for the division of governmental powers among the legislative, executive, and judicial branches of government, the creation of those branches of government operates as an apportionment of the different classes of power, and that because all three branches derive their authority from the same Constitution, there is an implied exclusion of each branch from the exercise of the functions of the others. See, e.g., *Paluck v. Bd. of Cty. Com'rs, Stark Cty.*, 307 N.W.2d 852 (N.D.1981); *City of Carrington v. Foster County*, 166 N.W.2d 377 (N.D.1969); *Kermott v. Bagley*, 19 N.D. 345, 124 N.W. 397 (1910).

Nor has this court undertaken, *by rule*, to exercise that authority contained in Section 27–11–01, as amended in 1983, which excludes from its provisions those persons exempt therefrom by virtue of "supreme court rule." As the dissent recognizes, our Rule 11.1 of the N.D.R.O.C. permits an attorney admitted and licensed to practice in a foreign State but not licensed to practice in North Dakota to "appear in a proceeding in a court of this State" if he first designates as his associate a resident attorney admitted and licensed to practice law in this State. The dissent further recognizes that there is no evidence in the record to indicate that Ranta associated with any resident attorney; therefore in this in-

---

5.   But see *Browne v. Phelps*, 211 Mass. 376, 97     N.E. 762 (1912) [sister-State exception rejected].

stance Rule 11.1 cannot be "interpreted liberally to allow for association with local counsel in all matters, whether in court or not," in order to sustain the trial court. Additionally, such a construction is contrary to the plain wording of the rule. If the rule is to be amended, it should be accomplished pursuant to the procedure set forth in the North Dakota Rule of Procedural Rules, Administrative Rules, and Administrative Orders (N.D.R.P.R.), before the fact rather than after the fact by judicial opinion.

· The dissent further argues that because the advice given was "tax advice," it must involve the Federal court and thus the Federal-court-practice exception should apply. The Federal-court-practice exception was not relied upon by the trial court nor by Ranta in his brief to this court and there is little in the record to sustain the conclusion reached by the dissent as to the precise nature of the legal advice. More important, however, the dissent does not provide even one citation for its sweeping application of the Federal-court-practice exception to this case and, as we have heretofore concluded, the application of such an exception in this case is not warranted.

■ According to our holding, an out-of-State lawyer not authorized to practice law in this State is prohibited from recovering any fees relating to the practice of law actually conducted in this State (unless that attorney falls within a recognized exception to the rule). Because Ranta does not fall within any of the recognized exceptions to the rule, the only issue remaining is the determination of which fees relate to the practice of law conducted outside of North Dakota. It is therefore necessary to remand the case for this determination.[6] Of course, the lower court also has the option of reducing the recoverable fees, if any, due to lack of adequate documentation of hours. See, e.g., *United Power Ass'n v. Faber*, 277 N.W.2d 287 (N.D.1979); *Rolfs-*

*tad, Winkjer, Suess, McKennett & Kaiser v. Hanson*, 221 N.W.2d 734 (N.D.1974).

The judgment is reversed and remanded.

ERICKSTAD, C.J., and GIERKE, J., concur.

LEVINE, Justice, dissenting.

I agree that the purpose of 27-11-01 is to protect the public from unqualified legal advisors. But I disagree that Mr. Ranta is the unqualified legal advisor intended to be protected against. Nor do I agree that the result in this case, where the facts are so dissimilar to *State v. Niska*, 380 N.W.2d 646 (N.D.1986) and *Application of Christianson*, 215 N.W.2d 920 (N.D.1974), is preordained by those precedents.

Mr. Ranta, unlike Mr. Niska, is trained in the law. Against Mr. Ranta's efforts to practice law in this state, the public needs no protection. Mr. Ranta, unlike Mr. Christianson, is not a suspended attorney. To the contrary, he is an attorney in good standing in Minnesota with 40 years of experience in tax law. Small wonder that Mr. McCarney sought out Ranta and maintained a working relationship with him over many years.

The only protection effected by the holding in this case is the protection of the economic interests of the attorneys of this state and the estate of Mr. McCarney. While there may be some justification for the former, the question is whether that justification outweighs the forfeiture to Ranta and windfall to McCarney occasioned by our holding. I do not believe it does and, therefore, I dissent.

The majority reasons that our statute's purpose is to determine before an individual practices in this state whether he is competent and qualified to do so. While I agree with this principle, I disagree that this purpose has not been fulfilled. The fact that Mr. Ranta holds a Minnesota license is precisely the determination that our statute seeks to accomplish. That such determination has been made by the Min-

---

**6.** Because of our holding differentiating between recovery for out-of-State and in-State fees, it may be necessary for the trial court to receive additional evidence.

nesota authorities, not ours, does not frustrate the statute's purpose. Indeed, we rely on the merit and judgment of the Minnesota bar and bench in a myriad of instances—our five-year admission to practice without examination, Rule 4, Admission to Practice, our approval of Minnesota continuing legal education seminars for North Dakota CLE credit, our liberal border city accommodation of Minnesota attorneys, and vice versa. That trust recognizes that modern demands of business and the mobility of our society—indeed the public interest, require a sensitivity to the ramifications of regulating the practice of law.

I believe that the circumstances of this case provide an exception to the general rule that an out-of-state attorney unlicensed in this state may not enforce a promise to pay attorney fees. The federal court practice exception may be fairly construed to encompass the instance of federal tax advice by an attorney licensed to practice in Minnesota. The majority dismisses out of hand the federal court exception because Ranta did not appear in federal court. Whether or not the tax advice given results in litigation and thus in federal court or tax court, is not in my view determinative. Arguably, good tax advice will not end in litigation so that the majority's conclusion aids "bad" tax attorneys and lowers the boom on "good" ones by withholding fees from the latter because they do not "appear" in federal court. It is the impermissible interference with federal practice by the State that justifies the federal court exception to the rule against recovery of fees. See *Spanos v. Skouras Theatres Corp.*, 235 F.Supp. 1 (SD N.Y. 1964). Since tax law is a matter of federal court jurisdiction, it is a comparable burden on federal courts for states to restrict who may represent tax clients out of court when litigation arising from such representation ends up in federal court, if at all. The justification for the federal court exception applies with equal force to the instant facts. I would thus affirm the judgment.

Because it will take many cases to refine and define the repercussions of the holding in this case, it may be helpful to discuss the local counsel exception contained in Rule 11.1, N.D.R.O.C. The majority acknowledges that some states allow an out-of-state attorney to recover fees where the attorney made proper disclosure to the client and associated with local counsel. Concluding that "such is not the situation here," the majority avoids consideration of that exception. I agree that there is insufficient evidence to support a finding that Ranta associated with local counsel. Indeed, the record here is abysmal because this case was really tried on the issues pleaded—namely, the nature of the legal services rendered (primarily tax advice) and their reasonable value. Had the issue of Mr. Ranta's nonlicensure in North Dakota been pleaded and tried, we would likely be privy to more relevant information. While the evidence is undisputed that Ranta was hired for tax advice and that the clients he served in North Dakota were tax clients, it is less clear whether local counsel was involved.

Rule 11.1, North Dakota Rules of Court, affords an out-of-state attorney the opportunity to practice in North Dakota by associating with local counsel. The interest of the client in choosing the attorney who will represent her, mandates liberal interpretation of rules or statutes restricting interstate practice. *Hahn v. Boeing Co.*, 95 Wash.2d 28, 621 P.2d 1263 (1980). Rule 11.1 should thus be interpreted liberally to allow for association with local counsel in all matters, whether in court or not. Better still, the rule should be amended to dispel any doubt. North Dakotans are entitled to the freedom to choose the best attorney available, whether in state or out and should be afforded the broadest latitude to do so.

Our state, of course, has legitimate interests in maintaining control over who may provide legal services within its borders. We are properly concerned over ensuring that legal representation be provided by persons of sound training, ethics and familiarity with not only the general principles of law, but the particular features of North

Dakota law. Here, that was accomplished. Therefore, the interests weighing in favor of enforcement of McCarney's promise to pay Ranta for legal services, i.e. the avoidance of unjust enrichment and forfeiture, are more substantial than the regulatory purpose of the statute.

Accordingly, I respectfully dissent.

MESCHKE, J., filed a dissenting opinion.

MESCHKE, Justice, respectfully dissenting.

I join fully in Justice Levine's well expressed dissenting opinion.

I add that I believe that the opinion of Justice VandeWalle is mistaken when it states: "The Federal-court-practice exception was not relied upon ... by Ranta in his brief to this court and there is little in the record to sustain the conclusion reached by the dissent as to the precise nature of the legal advice." Admittedly, the record on this issue is abysmal, undoubtedly because the defense of illegality was raised so belatedly, after the trial was completed.

But Ranta's brief to this court climaxed its statement of facts with this assertion:

"Ranta provided tax law representation and the commercial aspects were taken care of by another lawyer. (Tr. p. 39, 1.15.)."

At page 39, the transcript contains this strange, but confirming, exchange between Mr. Conmy, attorney for McCarney, and Mr. Ranta, during cross-examination:

"Q. Weren't you also guarding him on the liability exposure in all other areas covered by a major mercantile agreement?

"A. Well, let's say that I wasn't ignorant of them. I probably would have caught anything that may have been illegal or improper as far as commercial law is concerned, but that was not the reason why I was in this entire matter, you know. You're the one that set up the corporation for Mr. Holms. You're the one that merged the stock of McCarney Ford into Holm's Ford. You're the

one that liquidated the corporation for Mr. Holms. These are strictly commercial legal matters that I didn't have anything to do with. All I wanted to make sure of was that Mr. McCarney was protected tax wise.

"Q. Mr. Ranta, Max Rosenberg did all that.

"A. I am sorry. Forgive me. I think I saw an agreement that you had drawn with reference to the merger. It's on your legal paper.

"MR. CONMY: As secretary of the corporation of McCarney Ford, Incorporated."

Later, Ranta's brief to this court argued, "Ranta did not appear in Court, he gave only tax advice, which if it did involve appearing in Court it would be in Tax Court or federal court." We have dignified dimmer arguments with discourse and decision.

I also do not agree that legislative intent compels the result reached by Justice VandeWalle. The statute does not expressly make a contract with a nonresident attorney illegal, nor does it declare, as some statutes do, that "no person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney." See *Lozoff v. Shore Heights, Ltd.,* 35 Ill.App.3d 697, 342 N.E.2d 475 (1976). The result reached is really inferential. Inference of legislative intent should not so easily sweep aside the presumption of legality of a contract. *Mevorah v. Goodman,* 79 N.D. 443, 57 N.W.2d 600, 617 (1953).

For my part, I prefer the approach of *In Re Estate of Waring,* 47 N.J. 367, 221 A.2d 193 (1966), approving an award of fees to out-of-state counsel for a New Jersey estate for "federal tax matters, largely involving federal law and out-of-state activities." I believe the reasoning of that opinion is more realistic:

"Multistate relationships are a common part of today's society and are to be dealt with in commonsense fashion. While the members of the general public

are entitled to full protection against unlawful practitioners, their freedom of choice in the selection of their own counsel is to be highly regarded and not burdened by ' "technical restrictions which have no reasonable justification." ' " *Id.* 221 A.2d at 197.

Established policy of this state, as set out in the Code of Professional Responsibility adopted by this court, calls for the *Waring* result in this case:

"In furtherance of the public interest, the legal profession should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client or upon the opportunity of a client to obtain the services of a lawyer of his choice in all matters including the presentation of a contested matter in a tribunal before which the lawyer is not permanently admitted to practice." Ethical Canon 3–9, North Dakota Court Rules, 1986 Desk Copy (West Publishing Co.) at 616.

Because I believe the result reached in Justice VandeWalle's opinion is both unnecessary and unwise, I respectfully dissent.