47 N.J. 367 (1966)
221 A.2d 193
IN THE MATTER OF THE ESTATE OF DOROTHY FLEMING WARING, DECEASED.
ALOYSIUS F. SCHAEFFNER AND PLAINFIELD TRUST STATE NATIONAL BANK, EXECUTORS, ETC., ET AL., PLAINTIFFS-APPELLANTS,
v.
BARBARA C. SYKES, ET AL., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued May 10, 1966.
Decided June 27, 1966.
*368 Mr. Alfred C. Clapp argued the cause for the plaintiffs-appellants (Messrs. Clapp & Eisenberg, attorneys).
Mr. Donald B. Kipp argued the cause for the appellant Pitney, Hardin & Kipp (Messrs. Pitney, Hardin & Kipp, attorneys pro se; Mr. William H. Osborne, Jr. and Mr. John Barker, on the brief).
*369 Mr. Harrison F. Durand argued the cause for the defendants-respondents (Messrs. Durand, Twombly & Imbriaco, attorneys).
Mr. Stanley Tannenbaum argued the cause amicus curiae (Messrs. Reibel, Isaac & Tannenbaum, attorneys; Mr. Barry M. Epstein, on the brief).
The opinion of the court was delivered by JACOBS, J.
The County Court entered a judgment in October 1965 (amended in January 1966) denying any allowance for the legal services rendered by a New York law firm in connection with the administration of the estate of Dorothy Fleming Waring. Appeals were taken to the Appellate Division and we certified before argument there.
Mrs. Waring, a resident of Plainfield, New Jersey, died testate in March 1963, leaving a substantial estate. Her will was admitted to probate by the Union County Surrogate and Aloysius F. Schaeffner and the Plainfield Trust State National Bank qualified as executors. Mr. Schaeffner is a member of the bar of New York and is a partner of Patterson, Eagle, Greenough & Day, a New York law firm which has long represented members of the Waring family including Mrs. Waring, her husband Orville G. Waring who died in 1950, and Orville's father Orville T. Waring who died in 1923.
Orville G. Waring had New York business interests and was president of Borne Scrymser Company which had offices in New York City. The Patterson, Eagle, Greenough & Day firm was general counsel for the company and Mr. Waring was in frequent consultation with it. Mr. Waring's will was drawn and witnessed by members of the firm and after Mr. Waring died, his widow Mrs. Dorothy Fleming Waring requested that the firm represent her in connection with the administration of her husband's estate. During the remaining years of her life, Mrs. Waring continued the retention of the firm for her legal and personal affairs including the *370 preparation of her tax returns and the drafting and execution of various wills culminating in her last will and testament.
After Mrs. Waring's death, the executors retained the New York law firm which in turn retained New Jersey counsel, Messrs. Pitney, Hardin & Kipp of Newark. In an affidavit filed by Mr. Bogert, a member of the New York firm, he acknowledged that ordinarily executors would be expected to retain only New Jersey counsel in connection with the settlement of the estate of a New Jersey resident, but he pointed out that here the New York law firm had represented the Waring family for approximately fifty years, that "no other counsel could have had as much familiarity or as much understanding of this decedent's personal affairs and estate" and that Mrs. Waring "actually intended Patterson, Eagle, Greenough & Day to be retained in the settlement of her testamentary estate." Cf. Friendly, J., In re Ira Haupt & Co., 361 F.2d 164, 169, n. 8 (2 Cir. 1966): "a testator would normally expect and desire that the firm that handled his affairs during his life should continue to do so after his death."
When Mr. Schaeffner first consulted Messrs. Pitney, Hardin & Kipp, he spoke with Mr. Osborne, a member of that firm. Mr. Osborne stated that his firm would handle all of the New Jersey aspects of the administration of the estate, and that it would expect to receive a fair fee for its work which he estimated would be between $5,000 and $10,000. The appendix and briefs before us indicate that the New Jersey counsel attended to the probate of the will and the qualification of the executors, prepared the New Jersey inheritance tax report, attended to the sale of the decedent's residence in New Jersey, passed on all questions of New Jersey law which arose, and prepared and conducted the proceeding on accounting through the entry of judgment. The New York firm conferred from time to time with New Jersey counsel, and engaged in extensive activities relating to the preparation and filing of the federal income tax return and the federal *371 estate tax return, and in miscellaneous other activities including the termination of the decedent's lease on a summer residence in Massachusetts and the handling of considerable administrative detail work. An affidavit by Mr. Nyland, a member of Patterson, Eagle, Greenough & Day, set forth that its services "were separate and distinct from those rendered by New Jersey counsel and were performed within the State of New York, except in several isolated instances when no more than mere presence in New Jersey was required."
In June 1965, the executors filed a complaint which sought the allowance of their final account and commissions and attorneys' fees. Attached to the complaint was an affidavit by Mr. Osborne and affidavits by members of Patterson, Eagle, Greenough & Day, setting forth in detail the services rendered by them in connection with the administration of the estate of Mrs. Waring. Mr. Osborne's affidavit requested the allowance of $75,000 to Messrs. Pitney, Hardin & Kipp for the services rendered by them and the New York firm, the allowance to be shared by the firms in the following manner: Pitney, Hardin & Kipp, $10,000 and Patterson, Eagle, Greenough & Day, $65,000. This form of application was in strict compliance with R.R. 4:107-3 which provides that, on every application for attorney's fees, the attorney shall file an affidavit stating in detail the nature of the services and specifying the amount requested; the rule provides further that the affidavit shall state whether the fee is to be shared with any attorney or firm of another state and, if so, the manner of sharing, and shall be supported by a verified statement of the foreign attorney or attorneys setting forth in detail the nature of the services rendered; and the rule provides finally that "[t]he allowance shall be payable to the New Jersey attorney, and shall state what part, if any, of said allowance is to be paid to or shared with the foreign attorney or attorneys."
The County Court allowed the executors' commissions and also allowed the sum of $10,000 to Messrs. Pitney, Hardin & Kipp. It denied any allowance whatever for the services *372 rendered by New York counsel, expressing the view that both under "old Rule 1:12-5(a)" and under "the present rule" the retention of New York counsel was a violation of "the wording, the spirit and intent" of the Supreme Court's directives. The County Court did not pass on any questions of reasonableness or duplication with respect to the services rendered by the New York firm nor did it deal with the matter as one involving the exercise of judicial discretion. It took the position that it is wholly improper to engage the services of foreign counsel in connection with the administration of a New Jersey estate except where such services are absolutely necessary, as e.g., for the conduct of "litigation in the foreign forum" or the determination of "questions which are governed by the law of that jurisdiction." Bigelow, V.C., in Barsotti v. Bertolino, 128 N.J. Eq. 363, 366 (Ch. 1940). This highly restrictive approach may have been the correct one under L. 1939, c. 140 (R.S. 2:20-9) and former Rule 1:12-5(a). That it is not now the correct one and indeed was no longer so when the court acted in October 1965, and in January 1966, appears indisputable from a review of the pertinent history.
In 1939 the Legislature adopted an act which provided that counsel fees shall be allowed by our courts only to members of the New Jersey bar; a proviso permitted the retention of foreign counsel in any matter requiring his service and directed that in such instance the court shall make allowance for such service as though rendered by a member of the New Jersey bar. The act was repealed in 1952 and was replaced by a rule of court in similar terminology. This was originally Rule 1:8-16 and later became R.R. 1:12-5(a). In 1962 a Supreme Court committee proposed that R.R. 1:12-5(a) be modified so as expressly to permit, inter alia, the allowance of fees for services rendered by a foreign attorney "as to any phase of a matter where it is economical and efficient to retain him because of his previous familiarity therewith." See 85 N.J.L.J. 200 (1962). No definitive action was taken on this proposal and thereafter *373 in 1963 the committee recommended that R.R. 1:12-5(a) be entirely deleted from the rules. See 86 N.J.L.J. 206 (1963). This recommendation was presented to the 1963 Judicial Conference and received favorable though limited comment from the floor. At the request of committees of the State Bar Association, immediate action on the proposed deletion of R.R. 1:12-5(a) was withheld so that members of the bar would have further opportunity for expressing their views. See 86 N.J.L.J. 697 (1963).
During the 1964 Judicial Conference the proposed deletion came on for further discussion. Mr. Montgomery, Chairman of the New Jersey State Bar Association's Real Property, Probate and Trust Law Section, spoke in opposition, contending "that it will be harmful to a large segment, by far the greater majority, of the members of the Bar of this state." Mr. Archer of the Camden Bar spoke in support, noting that the Camden Bar Association had recorded its solid approval and expressing the view that "when the testator and the family has had a close relationship with counsel in New York and Philadelphia, I think the family is entitled to go to that counsel for advice in connection with that estate and deal with the man whom they have confidence in by reason of personal knowledge." He called the attention of the Conference to a recent New Jersey estate handled in association with Pennsylvania counsel in which the latter, because of its relationship with the family, was in an advantageous position to work out a family agreement with "great saving to all concerned", and he expressed the thought that it would be clearly wrong to deny allowance for the service rendered by the Pennsylvania counsel.
Mr. Albert of the Trenton Bar also spoke in support of the deletion of R.R. 1:12-5(a), stressing that primary consideration should be given to "the interests of the client rather than that of the lawyer." He noted that many "clients with the bulk of their business affairs here in New Jersey now reside across the river in the State of Pennsylvania" and that in these circumstances New Jersey lawyers have frequently *374 been called upon to utilize Pennsylvania counsel "as associates." He expressed the view that there was no need for the absolute exclusion of foreign attorneys, "particularly where the lawyer's long and intimate familiarity with the decedent's affairs make it important to the client to have the benefit of his services." Mr. Haines of the Mt. Holly Bar, the only other member of the Conference who rose to express his views, spoke in support of excising the rule which he considered to be a morally indefensible one.
On August 13, 1964, the Supreme Court directed that R.R. 1:12-5(a) be deleted as of September 9, 1964. At the same time the Court amended R.R. 4:107-3 so as to prescribe the procedure to be followed where the allowance being applied for is to be shared between local and foreign counsel. The import of the deletion of R.R. 1:12-5(a) and the amendment of R.R. 4:107-3 was entirely clear and was contemporaneously expressed in the various secondary authorities which dealt with the matter. See Clapp, New Jersey Practice, Wills and Administration § 1543 n. 25.5 (Supp. 1965); Waltzinger, New Jersey Practice, Rule 1:12-5, Rule 4:107-3 (Supp. 1966). The author's comment under Waltzinger's statement of Rule 1:12-5 reads as follows:
"With the deletion of paragraph (a), the rule no longer contains the controversial provisions prohibiting allowances except on account of actual service rendered by a member of the bar of the State of New Jersey engaged in the practice of law and maintaining an office in New Jersey. Formerly members of the bar of foreign jurisdictions were considered in the allowance of fees only where the services of such attorneys were absolutely required. With the deletion of paragraph (a) of this rule, it now becomes extremely important that attorneys consider the provisions of Canon 34 in their dealings with out-of-state attorneys. Attorneys should also consider the provisions of Rule 4:107-3 with respect to affidavits of services in Probate causes. The affidavit must now state whether any part of the requested fee is to be paid or shared with an attorney or firm of another state or jurisdiction, the details of the transaction must also be set forth along with an accompanying affidavit of the foreign attorney. The allowance shall recite what part, if any, of said allowance made to the New Jersey attorney is to be paid or shared with the foreign attorney."
*375 Canon 34, cited in Waltzinger, provides that "no division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility." It is primarily designed to prohibit fee splitting except between lawyers when measured by the actual extent of their respective work and accountability. When R.R. 1:12-5(a) was eliminated and R.R. 4:107-3 was amended, it was contemplated that any sharing of allowances between New Jersey and foreign attorneys would be in conformity with the Canon. In passing on any application for allowance, the court will have, in view of the explicit terms of R.R. 4:107-3 and R.R. 1:12-5, full opportunity to guard not only against unreasonable or duplicating requests, but also against any division of fees which is not fairly based on the respective service rendered or responsibility undertaken. See ABA, Opinions of the Committee on Professional Ethics and Grievances (1957), at pp. 412-16, Supplement to the 1957 Volume, at p. 74; cf. Drinker, Legal Ethics 186, 302 (1953); Annot., 6 A.L.R.3d 1446 (1966).
In the case at hand there was an actual division of service and responsibility and an allowance truly based on the respective extent thereof would not be in violation of the Canon. Nor would it constitute the sanctioning of unlawful practice of law within this State as avowedly feared by the County Court. Multistate relationships are a common part of today's society and are to be dealt with in commonsense fashion. While the members of the general public are entitled to full protection against unlawful practitioners, their freedom of choice in the selection of their own counsel is to be highly regarded and not burdened by "`technical restrictions which have no reasonable justification.'" Cf. New Jersey State Bar Ass'n. v. Northern N.J. Mtge. Associates, 32 N.J. 430, 437 (1960).
In Appell v. Reiner, 43 N.J. 313 (1964), New Jersey residents were represented by their New York lawyer who undertook to solve some of their financial difficulties. His work involved intertwined New York and New Jersey settlement *376 negotiations. In the course of our holding that he was not barred from suing here for all of his services, we reaffirmed the general principle that legal services to New Jersey residents with respect to New Jersey matters may ordinarily be furnished only by New Jersey counsel; but we pointed out that there may be multistate transactions where strict adherence to this thesis would not be in the public interest and that, under the circumstances, it would have been not only more costly to the client but also "grossly impractical and inefficient" to have had the settlement negotiations conducted by separate lawyers from different states. 43 N.J., at p. 317.
Though Spivak v. Sachs, 16 N.Y.2d 163, 263 N.Y.S.2d 953, 211 N.E.2d 329 (1965), resulted in the denial of compensation to a foreign attorney, Chief Judge Desmond expressed agreement with Appell, taking note of the danger that the law might improperly be stretched to outlaw customary and innocuous practices and recognizing that New York could not properly penalize every instance in which an out-of-state lawyer comes into New York "for conferences or negotiations relating to a New York client and a transaction somehow tied to New York." 263 N.Y.S.2d, at p. 956, 211 N.E.2d, at p. 331. The case involved a California lawyer who had come to New York where he remained for two weeks and gave a client extended advice as to New York law and as to a pending proceeding; strictly applying New York's Penal Law to the particular circumstances, the Court of Appeals concluded that the California lawyer could not recover for his services, but the closeness of the issue was evidenced by the fact that the Court divided four to three, reversing its Appellate Division which in turn had divided three to two. 21 A.D.2d 348, 250 N.Y.S.2d 666 (1964); cf. Spanos v. Skouras Theatres Corp., 235 F. Supp. 1 (S.D.N.Y. 1964), rev'd on March 18, 1966 in the Second Circuit by a divided vote, 364 F.2d 161, rehearing en banc pending, 89 N.J.L.J. 360 (June 2, 1966).
*377 As both Appell and Spivak illustrate, questions of unlawful practice will turn on the particular facts presented, and that was well understood when R.R. 1:12-5(a) was deleted and R.R. 4:107-3 was amended. Here the facts clearly negate unlawful practice and indeed present the very type of situation which primarily motivated the rule changes. There is nothing in the record to indicate that the New York law firm is engaged in any widespread practice of participating in the handling of New Jersey estates (cf. R.R. 1:12-1) or that this was not a situation in which admission pro hac vice might have been sought and granted. Cf. R.R. 1:12-8. The firm was in good faith retained by the executors because of its long-standing representation of the Waring family and its familiarity with the family affairs, and, on its recommendation, the executors retained New Jersey counsel to handle the New Jersey aspects of the estate. Thereafter its work was performed largely outside the borders of New Jersey and dealt for the most part with federal tax matters.
Although the appellants have suggested that this Court could not constitutionally restrict the New York firm from practicing before the federal tax agencies or prohibit compensation to it for such services, we find no occasion for dealing with that broad issue here. Cf. Sperry v. State of Florida, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); Spanos v. Skouras Theatres Corp., supra. We assume, for present purposes, that in their handling of the matter, the New Jersey and New York firms conscientiously sought to divide their services and responsibilities so as to avoid duplication and to insure, without unnecessary expense, the highest measure of efficiency and service to the estate. The New Jersey aspects including all legal proceedings in New Jersey and all questions of New Jersey law were naturally the responsibility of the New Jersey firm, though incidental common consultations were undoubtedly had and properly so. The allocation of the federal tax matters, largely involving federal law and out-of-state activities, to the New York firm with its prior relationship to the Waring family was understandable *378 and to the estate's advantage, though here again there were undoubtedly incidental common consultations.
No purpose would be served by further pursuit of the technical arguments advanced by the parties or the formal tests suggested by them for determining when a foreign attorney is wrongfully engaged in the practice of law within our State. As indicated earlier in this opinion, the subject must be viewed practically and realistically and must be dealt with in commonsensible fashion and with due regard for the customary freedom of choice in the selection of counsel; thus viewed and dealt with, there appears to be little room for doubt that, on the particular showing in the record before us, the out-of-state firm properly participated in the handling of the estate and so restricted its activities as to avoid any fair charge that it was wrongfully practicing law in New Jersey. That being so, there was no remaining basis for the County Court's view that, under the present rules of court, the services rendered by the New York law firm were to be wholly disregarded in determining the reasonable amount to be allowed on the application filed by New Jersey counsel.
One final item calls for comment. When New Jersey and New York counsel began the handling of the Waring estate, the former R.R. 1:12-5(a) was admittedly in effect. It is suggested that, under that rule, the understanding between counsel with respect to fees was illegal and that the illegality continued notwithstanding the later abrogation of the rule. It may be noted that the former rule did not speak in terms of illegality but spoke, in effect, only in terms of a prohibition against the judicial allowance of fees. Its language was somewhat obscure and it was being applied by the various county courts in varying manner. Proposals for its modification or abrogation were already under way and counsel may be taken to have contemplated that their understanding would be subject to the rules in force when allowance was ultimately sought from the court. Ordinarily an application for allowance is governed by the rules in effect at the *379 time of the application. Cf. 3 Scott, Trusts § 242, at p. 1928 (2d ed. 1956). We see no just reason for departing from that course here.
Reversed and remanded.
HALL, J., concurring in result.
For reversal  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO  6.
For affirmance  None.