761 A.2d 1103

IN THE MATTER OF THE APPLICATION OF STEVEN
B. JACKMAN FOR ADMISSION TO THE BAR.

Argued September 12, 2000—Decided December 1, 2000.

*Janet Brownlee Miller,* Deputy Ethics Counsel, argued the cause on behalf of the Committee on Character.

*Justin P. Walder,* argued the cause for respondent (*Walder, Sondak & Brogan,* attorneys; *Mr. Walder* and *John A. Brogan,* on the brief).

The opinion of the Court was delivered by

LaVECCHIA, J.

This Court issued an Order to Show Cause why Steven B. Jackman's admission to the bar should not be withheld for failure to meet the requirements of good character and fitness for admission. In its Report and Recommendation, a Regulation ("RG.") 303 Panel of the Committee on Character found that Jackman had been engaged in the unauthorized practice of law in New Jersey from August 1991 until April 1998 when he was employed as a Senior Associate at the law firm of Sills Cummis Radin Tischman Epstein & Gross, P.A., without a license to practice law in New Jersey.[1] The RG. 303 Panel recommended that Jackman's certification for admission be denied and the RG. 304 Review Panel agreed. The Court's jurisdiction is invoked pursuant to our supervisory authority over the Committee on Character, *R.* 1:25, which derives in turn from our constitutional power to govern the practice of law. *N.J. Const.* art. VI, § 2, ¶ 3.

We now hold that Jackman did engage in the unauthorized practice of law from 1991 to 1998, that the nature of his practice did not obviate the need to be licensed in New Jersey, and that he was responsible for that conduct notwithstanding his reliance on the advice of the managing partner of the New Jersey law firm in which he was employed. We agree with the RG. 304 Review Panel that Jackman's unauthorized practice of law reflects nega-

---

1. In assessing the character and fitness of a candidate to practice law, the Committee on Character operates under Regulations, which have been approved by this Court, RG. 101 through RG. 402, available at <http://www.njbar exams.org>. The Committee is divided into Parts assigned to specified areas. RG. 102:3. A member of a Part will be assigned to review the Statement of Candidate and related documents. RG. 302:1. If the reviewing member determines not to certify a candidate, a Conference with the Candidate is held by three members of the Part, resulting in a report setting forth findings of fact and a recommendation. RG. 303:1. If the recommendation is to withhold certification, a Candidate may appeal to an Appeal Panel, which shall file its own report and recommendation. RG. 304:1. The Court shall make the final determination in all matters where a RG. 303 Conference has been held. RG. 304:3.

tively on the candidate's fitness for admission. However, Jackman's certification for admission already has been delayed since July 1999. We hold, therefore, that delaying Mr. Jackman's certification for admission until January 2, 2001 shall serve sufficiently to underscore to the candidate the need to appreciate and abide by the laws, rules, and procedures governing attorneys admitted to the bar of this State.

## I.

The facts are essentially undisputed. Jackman was licensed as an attorney in Massachusetts in January 1985, following his graduation from Harvard Law School. He was employed at the Boston law firm of Goodwin, Proctor & Hoar until 1991 when he became employed as an associate at the New Jersey law firm of Sills Cummis Radin Tischman Epstein & Gross (Sills Cummis).

Jackman applied to sit for the New Jersey bar examination in February 1992. As the exam date approached, a closing was scheduled for an unusually large transaction in which the firm was involved. Jackman testified that he was advised by the firm's managing partner that his time was needed for that transaction, and he was "politely requested" not to take the February bar exam. Jackman stated that he was advised further by the managing partner that "there was no particular necessity that [he] take the bar exam in New Jersey in order to . . . practice corporate law in New Jersey—but that sooner or later [he] ought to take it because it's kind of a good idea." Accordingly, Jackman withdrew from sitting for the February 1992 bar exam. He explained that although he still planned to take the New Jersey bar exam, he determined to delay sitting for it until he learned whether Sills Cummis was going to make him a partner. He was due for consideration as a partner in 1995. He was considered for partner in 1995 and then again each of the next three years.

In the meantime, in 1993 Mr. Jackman placed his Massachusetts license to practice law on inactive status. He testified that he was informed by a representative of the Bar Overseers from Massa-

chusetts that the "inactive status" category covered persons not practicing in Massachusetts but who were practicing in other states. While Jackman said that he did make it clear that Massachusetts was the only state in which he was licensed, he conceded that in that exchange the Massachusetts Bar Overseer representative never informed him that his Massachusetts license, inactive or active in status, was alone sufficient for practice in another state. He never made any inquiry to the New Jersey Board of Bar Examiners or other official personnel regarding his need for a New Jersey license. Throughout the period that his Massachusetts license was inactive, he remained a member in good standing, subject to discipline and licensing standards of the State of Massachusetts.

Jackman worked for Sills Cummis from 1991 to 1998. He never took the bar exam in New Jersey. During that time he did not appear in court nor did he sign any pleadings in any litigated matter. But, as an associate handling mergers and acquisitions, and general corporate law matters, he did prepare and sign legal documents, counsel clients, negotiate with other attorneys on behalf of his clients, and bill for his time as a Senior Associate. He testified that during this period his name appeared on the firm's letterhead as an associate of the firm, with an asterisk to indicate "Admitted in jurisdiction other than New Jersey" or words to that effect. He pointed to the fact that others on the firm's letterhead were noted as "Admitted in New York." However, we are informed that Sills Cummis has an office location in New York. There was no clear indication that Jackman was admitted *only* in another jurisdiction. However, if clients specifically inquired, they were told that he was not a member of the New Jersey bar.

Although he claims that he consulted New Jersey licensed attorneys at the firm on New Jersey law issues "virtually always," there is no contention here that Jackman functioned in a law-clerk-like status. As the record before the RG 303 and 304 Panels plainly reveals, Jackman functioned as a full associate involved in

transactional matters. He consulted with other lawyers on New Jersey law matters, but otherwise operated as if he were a fully authorized associate at the firm.

Eventually, Jackman left the Sills Cummis firm to work for a New York law firm. That firm promptly advised him that he must sit for the New York bar exam. Accordingly, in July 1999 he sat for both the New York and New Jersey bar, and as a result this history came under the scrutiny of the Committee on Character, which has recommended against Jackman's certification for admission.

## II.

Lawyering is a profession of "great traditions and high standards." Speech by Chief Justice Robert N. Wilentz, Commencement Address—Rutgers University School of Law, Newark (June 2, 1991), *in* 49 *Rutgers L.Rev.* 1061, 1062 (1997). Consistently this Court has referred to bar admission as a "privilege burdened with conditions." *In re Application of Matthews,* 94 *N.J.* 59, 75, 462 *A.*2d 165 (1983) (citing *In re Pennica,* 36 *N.J.* 401, 433, 177 *A.*2d 721 (1962)). The core conditions, articulated more than 150 years ago in *On Application for Attorney's License,* 21 *N.J.L.* 345, 1848 *WL* 3476 (Sup.Ct.1848), resonate as soundly in the Twenty First Century as they did when uttered: "good moral character, a capacity for fidelity to the interests of clients, and for fairness and candor in dealings with the courts." *In re Pennica, supra,* 36 *N.J.* at 434, 177 *A.*2d 721. Today those concepts are joined together in the overall "fitness to practice" standard set forth in *R.* 1:25. As Justice Handler explained in *In re Application of Matthews,* the fitness requirement is rooted in the State's fundamental interests in regulation of the legal profession:

> first, the protection of prospective clients, and second, the assurance of the proper, orderly and efficient administration of justice. These governmental interests were described by the Florida Supreme Court:
>
>> The layman must have confidence that he has employed an attorney who will protect his interests. Further, society must be guaranteed that the applicant will not thwart the administration of justice. These exigencies arise because the technical nature of law provides the unscrupulous attorney with a frequent vehicle to defraud a client. Further, the lawyer can obstruct the judicial process in numerous ways, e.g., by recommending perjury, misrepresenting case hold-

ings, or attempting to bribe judges or jurors. *In re Eimers,* 358 *So.*2d 7, 9 (Fla.1978) (citation omitted).

... [A] bar applicant must possess a certain set of traits—honesty and truthfulness, trustworthiness and reliability, and a professional commitment to the judicial process and the administration of justice. These personal characteristics are required to ensure that lawyers will serve both their clients and the administration of justice honorably and responsibly.

[*In re Application of Matthews, supra,* 94 *N.J.* at 77, 462 *A.*2d 165.]

Those fundamental state interests described in *In re Application of Matthews* are implicated whether an attorney counsels a client through a transaction culminating in the client's execution of legally binding documents, or counsels and represents a client during a litigated matter. The protection of the public and the assurance of the proper, orderly, and efficient administration of justice in New Jersey are ensured in our state through the requirement that only attorneys authorized to practice law in New Jersey may engage in legal activities.

New Jersey Court Rule 1:21-1(a) expressly provides:

[N]o person shall practice in this State unless that person is an attorney holding a plenary license to practice in this State, has complied with the Rule 1:26 skills and methods course requirement in effect on the date of the attorney's admission, is in good standing, and, ... maintains a bona fide office for the practice of law in this State regardless of where the attorney is domiciled.

\* \* \*

No attorney authorized to practice in this State shall permit another person to practice in this State in the attorney's name or as the attorney's partner, employee or associate unless such other person satisfies the requirements of this rule.

[*R.* 1:21-1(a).]

The exceptions to the requirement of a New Jersey plenary license are limited to *pro hac vice* admissions granted pursuant to *R.* 1:21-2 to a member of the bar of another state, foreign legal consultants certified pursuant to *R.* 1:21-9, third year law students and law school graduates participating in approved programs in within the limits of *R.* 1:21-3, and certain non-attorneys appearing before the Office of Administrative Law or an administrative agency, *R.* 1:21-1(f). In situations involving sister state or foreign licensure, authorization to practice is subjected to prior court review and approval. In the other circumstances noted, the legal

activity is conducted under the supervision of a member of the bar in good standing pursuant to a program approved by the Court, or the case of the administrative law appearance it is conducted pursuant to rules established by the Office of Administrative Law.

The care with which the exceptions have been carved out underscores the Court's commitment to the rule requiring a New Jersey plenary license in order to engage in the practice of law. Indeed, even a cursory review of the rules governing Practice and Admission to Practice should put a reasonable person on notice that a license is required unless one is acting pursuant to a carefully delineated exception.

Often issues related to the unauthorized practice of law involve exercises in line drawing between the proper realm of another profession or business activity and the practice of law. See *In re Opinion No. 24,* 128 *N.J.* 114, 122, 607 *A.*2d 962 (1992) and cases cited therein. No such esoteric exercise is involved here.

■ Here we have the unabashed practice of law in New Jersey by one who lacked a New Jersey license to practice. Complicating this matter even further is the fact that Jackman reduced to inactive status his license to practice in the only state in which he was admitted—Massachusetts. He could not have used that Massachusetts license to practice law in Massachusetts once he placed it on inactive status in 1993, yet he argues incongruously that it should serve as a basis to support his position that he could perform legal services in New Jersey even while he lacked a New Jersey license.

■ As an associate at Sills Cummis, Jackman clearly was practicing law in New Jersey. He acknowledged this at the hearing and conceded the same before this Court. The fact that he may not have appeared in court, but worked on transactional matters, does not affect that conclusion. The practice of law in New Jersey is not limited to litigation. *State v. Rogers,* 308 *N.J.Super.* 59, 67–70, 705 *A.*2d 397 (App.Div.), *certif. denied,* 156 *N.J.* 385, 718 *A.*2d 1214 (1998). One is engaged in the practice of law whenever legal knowledge, training, skill, and ability are required. *Id.* at 66, 705 *A.*2d 397. Other jurisdictions have

adopted a similar definition. *See Kennedy v. Bar Ass'n*, 316 *Md.* 646, 561 *A* .2d 200, 208 (1989)(using legal education, training, and experience to apply legal analysis to client's problems constitutes practice of law).

Although our rules recognize an exception for a law school graduate or third year student to engage in practice as part of a prior approved supervised program pursuant to *R.* 1:21–3(b), or to answer a calendar call for his or her firm pursuant to *R.* 1:21–3(a), those exceptions do not fit Jackman's circumstances. Nor was Jackman functioning as a law clerk, preparing legal research and documents for review and action by another responsible attorney licensed in New Jersey. Jackman had taken on all the duties of a lawyer rendering legal services to clients. He interviewed and counseled clients, prepared and signed documents to or on behalf of clients, and negotiated with lawyers on the merger and acquisition matters he handled. This was not a law clerk situation.

Jackman's practice of law at Sills Cummis for almost seven years without a New Jersey license was in direct conflict with the plain terms of *Rule* 1:21–1(a). There is no exception from our licensure requirement for an attorney who practices law as an associate at a New Jersey law firm while holding only a license issued by another state. Nor is there an exception from our licensure requirement if one engages in transactional law only and does not enter appearances in court. The facts here compel one conclusion: Jackman practiced law in New Jersey for almost seven years handling legal matters implicating the rights and remedies of clients. That practice was unauthorized.

Other states with similar licensing requirements have likewise concluded when confronted with comparable circumstances. *See Kennedy, supra,* 561 *A.*2d at 200 (holding attorney practicing law in Maryland on a regular basis, advising clients and preparing legal documents, for several years without Maryland license engaged in unauthorized practice of law); *In re Roel,* 3 *N.Y.*2d 224, 165 *N.Y.S.*2d 31, 144 *N.E.*2d 24 (1957), *appeal dismissed,* 355 *U.S.* 604, 78 *S.Ct.* 535, 2 *L.Ed.*2d 524 (1958) (holding attorney licensed

to practice law in Mexico engaged in unauthorized practice of law when he counseled clients in his New York office on Mexican law); *Ginsburg v. Kovrak,* 392 *Pa.* 143, 139 *A.*2d 889(Pa.), *appeal dismissed,* 358 *U.S.* 52, 79 *S.Ct.* 95, 3 *L.Ed.*2d 46 (1958) (holding that state licensure requirement was "wholly clear" when concluding that attorney practicing law in Pennsylvania without license engaged in unauthorized practice of law).

We, too, find New Jersey's requirement of a plenary license entirely clear under *R.* 1:21–1. The importance of our public policy assuring the lay public that only those properly approved for bar admission in New Jersey may render legal services here is underscored by the Legislature's designation of the unauthorized practice of law as a disorderly person's offense or a crime of the fourth degree. *N.J.S.A.* 2C:21–22.

Jackman's regular performance of legal services in New Jersey is precisely the type of legal activity that our bar admission standards seek to regulate. In so holding we are acutely aware of the differences between Jackman's regular performance of legal services to clients of Sills Cummis in its New Jersey office and the circumstances presented by the incidental provision of services to a New Jersey client by a member of an out-of-state law firm who is licensed only by the out-of-state jurisdiction. Such scenarios were practically addressed by the Court when presented in *In re Waring's Estate,* 47 *N.J.* 367, 221 *A.*2d 193 (1966) and *Appell v. Reiner,* 43 *N.J.* 313, 204 *A.*2d 146 (1964).

In *In re Waring, supra,* 47 *N.J.* at 369, 221 *A.*2d 193, a New York law firm had a long association with the business affairs of decedent and decedent's family. After decedent died, the family retained the New York law firm. *Id.* at 370, 221 *A.*2d 193. A member of the New York firm later acknowledged that ordinarily it would be proper for decedent to hire local counsel, but because the firm had represented the family for approximately fifty years, no one else had the familiarity or understanding of the decedent's affairs and estate. *Ibid.* The New York firm retained local counsel to handle the New Jersey aspects of the matter. *Id.* at

370–71, 221 A.2d 193. The New York firm's services were separate and distinct from those rendered by the New Jersey counsel and were performed for the most part within the State of New York. *Id.* at 371, 221 A.2d 193.

In ruling, the Court noted that multi-state relationships are a common aspect of today's society. *Id.* at 375, 221 A.2d 193. Holding that the New York firm had not violated the rule against the unauthorized practice of law, the Court acknowledged that there was nothing in the record to indicate that the New York law firm engaged in a widespread practice of participating in the handling of New Jersey estates. *Id.* at 377, 221 A.2d 193.

Similarly, in *Appell, supra,* 43 *N.J.* at 314, 204 A.2d 146, it was held not to be the unauthorized practice of law for a New York attorney to assist New Jersey residents in matters involving the extension of credit and the compromise of claims held by New York and New Jersey creditors. The lawyer and the client originally met in the lawyer's New York office to discuss an offer the client had received to settle a contest over his father's will. *Id.* at 315, 204 A.2d 146. At that meeting, the client told the New York attorney that a settlement would be unhelpful because of other matters involving his New Jersey and New York creditors. *Ibid.* Thereafter, the New York attorney was retained to handle the client's financial troubles with both the New Jersey and New York creditors. *Ibid.* This Court considered "whether [the] New York counsel should have restricted his representation to that New York creditor." *Id.* at 316, 204 A.2d 146. Considering that the attorney's services in dealing with the New Jersey and New York creditors were interwoven, and that the major creditor was from New York, the Court held that in those unique circumstances the attorney did not engage in the unauthorized practice of law. *Id.* at 316–17, 204 A.2d 146.

Both *Appell* and *In re Waring* involved transitory legal activities in New Jersey by out-of-state attorneys employed by out-of-state firms that were countenanced by the Court because of the unique facts of those cases. In those cases the out-of-state

attorney was not practicing long term as a member of an in-state law firm. *Appell* and *In re Waring* permitted the use of out-of-state attorneys only to participate in a single transaction. Jackman's actions, during the almost seven year period he served as an associate at the New Jersey law firm of Sills Cummis without a New Jersey license, are patently distinct. His activities were not authorized by the past precedent of either *Appell* or *In re Waring*.

Nor do we find that Jackman's legal activity in New Jersey falls within the practice permitted by the Court in *Opinion 33*, 160 *N.J.* 63, 733 *A.*2d 478 (1999). In *Opinion 33*, the Attorney General petitioned for review of an opinion of the Committee on the Unauthorized Practice of Law, which concluded that out-of-state attorneys engage in the unauthorized practice of law when they advise New Jersey governmental bodies in connection with issuance of state and municipal bonds. *Id.* at 65, 733 *A.*2d 478. The Court held that the determination was over-broad and not adequately reflective of the variety of factors that affect the public interest in the regulation of bond counsel. *Ibid.*

For years attorneys specializing in bond transactions were sought from out-of-state law firms because of necessity: New Jersey firms lacked the expertise and national recognition to offer advice on bond transaction issues. *Id.* at 66, 733 *A.*2d 478. The Court acknowledged that there was no doubt that those lawyers engaged in the practice of law. *Id.* at 78, 733 *A.*2d 478. It then applied the "public interest" test to determine whether the practice was permitted. That test mainly entailed balancing the risks and the benefits to the public of allowing or disallowing the activities. *Id.* at 77, 733 *A.*2d 478. The Court's analysis was limited to "the propriety of attorneys unlicensed in New Jersey performing legal services in connection with bond issues by New Jersey public entities." *Id.* at 79, 733 *A.*2d 478. Ultimately, the Court held that out-of-state firms or lawyers unlicensed in New Jersey, but affiliated with multi-state firms that have bona fide offices in New Jersey, may perform legal services related to New Jersey bond issues if engaged to do so by New Jersey bond

counsel who retain overall responsibility for representation of the issuer. *Id.* at 81, 733 *A.2d* 478. We emphasized that this was a "special circumstance" by which lawyers unlicensed in New Jersey could practice law in New Jersey. *Id.* at 82, 733 *A.2d* 478. That limited "special circumstance" is not pertinent to the facts of this case.

## III.

We conclude that Jackman's practice of law in New Jersey during the time period of 1991 to 1998 while he served as an associate at Sills Cummis constituted the unauthorized practice of law. Jackman explains his conduct by stating that he reasonably relied on the advice, given by the managing partner of that firm, concerning his need for a New Jersey license. That reliance was misplaced.

The duty to be knowledgeable about and compliant with bar admission and practice requirements is a personal one. An applicant for admission cannot have his past errors excused by simply pointing to another member of his firm, albeit a managing partner, upon whose word he relied. Jackman testified that he never personally inquired about his need for bar admission in New Jersey by contacting any official connected with the regulation of bar admissions in New Jersey. He was remiss in this failure to ensure that at all times he was compliant with the conditions that attach to the privilege of licensure as an attorney in this State.

Jackman also argues that there are other lawyers practicing in New Jersey law firms without having become licensed in New Jersey. Further, Jackman points to the national debate concerning licensure issues implicated by the modern multi-jurisdictional practice generally, and specifically in the area of transactional law practice.

As to the latter, we note that the American Bar Association is considering amending the Model Rules of Professional Conduct to permit lawyers to work in a state, without temporary admission, under various scenarios. Henry Gottlieb, *ABA Mulls Rule To Let*

*Lawyers Cross State Lines,* 160 *New Jersey Law Journal* 1215 (June 19, 2000). Commentators warn of the current danger of engaging in the unauthorized practice of law when one is employed in a multi-jurisdictional firm especially when involved in transactional activities. *See e.g.,* Diane Leigh Babb, *Take Caution When Representing Clients Across State Lines: The Services Provided May Constitute the Unauthorized Practice of Law,* 50 *Ala. L.Rev.* 535 (1999); Charles W. Wolfram, *Sneaking Around in the Legal Profession: Interjurisdictional Unauthorized Practice by Transactional Lawyers,* 36 *S. Tex. L.Rev.,* 665 (1995). Indeed, it has been pointed out that calls for reform of the laws limiting a lawyer's ability to practice law beyond the boundaries of the state in which the lawyer is admitted have gone on for more than half a century. See *Negotiating Multi–State Transactions: Reflecting on Prohibiting the Unauthorized Practice of Law,* 12 *St. Louis U. Pub.L.Rev.* 113, 133, n. 2 (1993).

That ongoing national discussion has nothing to do with this case. We have not amended our rules. Our practice requirements are straightforward and may not be ignored. Unless and until we amend our rules governing admission to practice, the existing rules must be followed. The California Supreme Court expected no less in *Birbrower Montalbano Condon & Frank, P.C. v. Superior Court,* 17 *Cal.*4th 119, 70 *Cal.Rptr.*2d 304, 949 *P.*2d 1 (1998) (holding New York members of New York firm to California licensure requirement when they had engaged in legal activities in California). We regard with concern Jackman's assertion that there are numerous others in circumstances like his practicing in New Jersey law firms. Accordingly, we refer that assertion to the Committee on the Unauthorized Practice of Law for review and appropriate recommendation.

With regard to Jackman's application for admission, we agree with the Committee on Character that Jackman's earlier failure to abide by the details of our admission and practice rules reflected negatively on his fitness to practice. When considering a candidate for admission we look for evidence of character that will

maintain the ability of our system of justice to rely on the integrity of officers of the court and their individual fidelity to the practice and procedure requirements by which we operate.

In *In re Application of Matthews,* we stated:

> We also believe that applicants must demonstrate through the possession of such qualities of character the ability to adhere to the Disciplinary Rules governing the conduct of attorneys. These Rules embody basic ethical and professional precepts; they are fundamental norms that control the professional and personal behavior of those who as attorneys undertake to be officers of the court. These Rules reflect decades of tradition, experience and continuous careful consideration of the essential and indispensable ingredients that constitute the professional responsibility of attorneys. Adherence to these Rules is absolutely demanded of all members of the Bar.
>
> [*In re Application of Matthews, supra,* 94 *N.J.* at 77–78, 462 *A.*2d 165.]

Our rules of professional conduct speak directly to the expectation that a lawyer will see to it that he or she shall not engage in the unauthorized practice of law. *RPC* 5.5(a). The Committee on Character exercised sound judgment when determining that Jackman's history of unauthorized practice while at Sills Cummis was directly relevant to the question of his certification of fitness to practice here now.

We note that Jackman's application to be admitted to the bar in New Jersey has been pending since the July 1999 bar examination. The delay in his certification should underscore to this candidate the seriousness with which we view his earlier improper practice and his failure to be responsible in discerning his personal obligation to satisfy our admission and practice requirements.

## IV.

The Court adopts the recommendation of the Committee on Character that certification of Steven B. Jackman for admission to the bar be withheld, but with modification. Because of the time that has passed, and because this unusual case does not pose a situation that demands proof of rehabilitation pursuant to R.G. 304:4 before certification may issue, the Committee's recommenda-

tion is modified to permit Jackman's certification of fitness to issue effective January 2, 2001.

So Ordered.

*For adoption and modification*—Chief Justice PORITZ, and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—6.

*Opposed*—None.